UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK J. EAVENSON, D. C., d/b/a<br>MULTI-CARE SPECIALISTS, P. C.,<br>individually and on behalf of others<br>similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SELECTIVE INSURANCE COMPANY<br>OF AMERICA,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 06-731-MJR<br>)<br>)<br>)<br>)<br>) |

**ORDER**

**REAGAN, District Judge:**

Before the Court is Plaintiffs', Mark J. Eavenson, D. C., d/b/a Multi-Care Specialists, P. C., individually and on behalf of others similarly situated, (collectively, "Eavenson") Motion to Remand (Doc. 8). The matter being fully briefed and the parties having been heard, the Court will grant Eavenson's motion for the reasons set forth below.

**I.**  **Factual Background and Procedural History**

On September 20, 2006, Defendant Selective Insurance Company of America ("Selective") removed this action from the Circuit Court, Third Judicial Circuit, Madison County, Illinois. This putative nationwide class action is based on Selective's alleged improper discounting of a class of licensed healthcare providers' bills for medical services rendered to persons covered by Selective property and casualty insurance policies. The action involves the agreements, or lack thereof, among the parties to a Preferred Provider Organization ("PPO"), specifically, the preferred provider, the insurance companies or payors, and the administrator who establishes this arrangement,

herein Eavenson, Selective and CorVel, respectively. *See* Plaintiff's Second Amended Complaint ("Second Am. Compl.") ¶ 10.

In the original complaint, Eavenson brought four counts: 1) that Selective breached its contract with its insured persons, under which Eavenson had a right of payment, by virtue of assignment or as a third party beneficiary; 2) that Selective was unjustly enriched by improperly paying Eavenson's bills at reduced PPO rates while providing no consideration to Eavenson; 3) that the court should enter "declaratory judgment" that Selective's payment of medical bills at discounted PPO rates is a breach of the applicable insurance contracts; and 4) that Selective violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., and other substantially similar laws of other states, by committing these unfair and deceptive acts and by intending Eavenson to rely on its right to claim PPO discounted rates.

On or about October 29, 2004, Eavenson filed his First Amended Complaint, in which he added a count for civil conspiracy and dropped the counts for breach of contract and declaratory judgment. Selective moved to dismiss and Eavenson failed to respond. As a result, on or about June 29, 2006, the court dismissed the claims of unjust enrichment and violation of the Consumer Fraud Act. On or about August 21, 2006, Eavenson filed Second Amended Complaint, alleging consumer fraud and deceptive business practices, unjust enrichment, breach of contract and civil conspiracy. Thereafter, Selective removed the case.

In Eavenson's Second Amended Complaint, he alleges that Selective improperly discounted bills for medical services based on a purported PPO reduction. Second Am. Compl., ¶ 2. Eavenson states that Selective does not dispute the reasonableness or necessity of the medical charge nor that the treatment is for injuries relating to covered losses; rather, Selective

2

systematically takes improper PPO reimbursement reductions on its payments for medical treatment without any valid right to do so. *Id*. According to Eavenson, Selective wrongfully and deceptively reduces payments to him and other licensed healthcare providers by claiming the benefits from purported PPO agreements without any evidence that valid PPO agreements exist and/or without performing the associated obligation of "preferring" the effected healthcare providers to their insureds/beneficiaries through financial incentives designed to channel patients to Eavenson. *Id*. at ¶¶ 3, 10. Eavenson asserts that Selective has illegally reaped huge savings while giving no consideration to healthcare providers for the right to apply these discounts. *Id*. at ¶ 28. Eavenson states that the improper practice employed by Selective is known in the insurance industry as a *"silent PPO." Id*. at ¶ 12.

The **Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005)** ("CAFA"), expressly applies to class actions commenced on or after its enactment. This class action was commenced on October 27, 2003, more than a year before the enactment of the CAFA.

Eavenson argues that this Court lacks jurisdiction because the CAFA does not apply to cases commenced before its enactment, and Selective failed to present competent evidence of the amount in controversy.

Selective responds that Eavenson's Second Amended Complaint asserts a new claim which commenced a new, removable cause of action and that the amount in controversy threshold has been met.

**II.** **Legal standards**

    **A.** **Removal**

Removal of actions from state court to federal court is governed by 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." **28 U.S.C. § 1441(a)**. The defendant has the burden of establishing that an action is removable, and doubts concerning removal must be resolved in favor of remand to the state court. *See Brill v. Countrywide Home Loans, Inc.*, **427 F.3d 446, 448 (7th Cir. 2005)**.

### B. Diversity Jurisdiction under the CAFA

Under the CAFA, federal courts have jurisdiction in diversity, with exceptions not at issue here, *see* **28 U.S.C. § 1332(d)(3), (d)(4), (d)(5), (d)(9)**, over class actions with one hundred or more class members, *see* **28 U.S.C. § 1332(d)(5)(B)**, in which any member of the plaintiff class is a citizen of a state different from that of any defendant, or any member of a plaintiff class or any defendant is a foreign state or a citizen or subject of a foreign state. *See* **28 U.S.C. § 1332(d)(2)**. In a class action in which the CAFA's requirement of minimal diversity is met, a federal court has jurisdiction if, after aggregating class members' claims, more than $5 million, exclusive of interest and costs, is in controversy. *See* **28 U.S.C. § 1332(d)(2), (d)(6)**. Class actions filed in state court that satisfy the jurisdictional prerequisites of the CAFA are subject to removal to federal court. *See* **28 U.S.C. § 1453(a), (b)**.

### III. Discussion

"The CAFA is not retroactive and therefore only applies to class actions which are 'commenced on or after the date of enactment' of the statute, February 18, 2005." *Schillinger v. 360 Networks USA, Inc.*, **Civil No. 06-138-GPM, 2006 WL 1388876, at *2 (S.D.**

**Ill. May 18, 2006) (quoting Pub. L. 109-2, § 9, 119 Stat. 4)**. In general a class action is commenced for purposes of removal under the CAFA on the date it originally was filed in state court. *See Knudsen v. Liberty Mut. Ins. Co.*, **411 F.3d 805, 806 (7th Cir. 2005)**. In some instances, however, an amendment to a complaint may commence (or perhaps more correctly, recommence) a class action after the effective date of the CAFA so as to make the action removable under the statute. "An amended complaint kicks off a new action only if, under the procedural law of the state in which the suit was filed, it does not 'relate back' to the original complaint." *Santamarina v. Sears, Roebuck & Co.,* **466 F.3d 570, 573 (7th Cir. 2006) (citations omitted)**.

"The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Id*. **(citations omitted)**. Under Illinois law, as under federal law, an amendment "relates back" when it arises out of "the same transaction or occurrence set up in the original pleading." **735 ILCS 5/2-616(b);** *Chandler v. Illinois Central R.R.,* **207 Ill.2d 331, 346 (Ill. 2003);** *see* **FED. R. CIV. P. 15(c);** *Schorsch v. Hewlett-Packard*, **417 F. 3d 748, 751 (7th Cir. 2005);** *Delgado-Brunet v. Clark,* **93 F.3d 339, 343 (7th Cir. 1996).** Illinois courts have also found that "an amendment relates back . . . when the original complaint 'furnished to the defendant all the information necessary . . . to prepare a defense to the claim subsequently asserted in the amended complaint.'" *Boatmen's National Bank of Belleville v. Direct Lines, Inc.,* **167 Ill.2d 88, 102, 656 N.E.2d 1101, 1107 (Ill. 1995);** *Pierce v. Joe Keim Builders, Inc*. **274 Ill.App.3d 371, 374, 653 N.E.2d 928, 931(Ill.App. 1995) (citations omitted) ("Thus, an amended complaint relates back only when the original complaint supplies defendant with all of the information necessary to prepare the defense to**

**the claim asserted in the amended pleading."**).  The focus is not on the nature of the cause of action pled but on the identity of the transaction, *i. e.*, ". . . if the defendant has been made aware of the occurrence or transaction which is the basis for the claim, he will be able to defend against the plaintiff's claim, whatever theory it may be predicated upon." ***Pierce*, 274 Ill.App.3d at 374, 653 N.E.2d at 931 (citations omitted)**.

Selective first contends that Eavenson's second amended complaint asserted a new claim for breach of payor agreement and, thus, commenced a new, removable action.  Selective argues that nowhere in Eavenson's two earlier complaints did he allude to a payor agreement between Selective and CorVel that Selective breached by not channeling patients to Eavenson.

This is patently incorrect.  In Eavenson's first amended complaint, he asserted that he had entered into a contract with CorVel and that CorVel, in turn, entered into agreements with payors, including Selective.  First Am. Compl., ¶¶ 10, 11.  Eavenson alleged that, pursuant to that agreement, payors would have access to the CorVel network and its discounts in return for meaningful referrals, channeling and steerage to network providers.  *Id*. at ¶ 10.  Selective has identified no new contract that would have commenced a new, removable action.

Selective next contends that Eavenson's addition of the factual allegation that Selective submitted his bills to Corvel for review constitutes a new, removable action.  Selective points out that Eavenson previously alleged that Selective, utilizing certain software, applied discounts to and processed provider bills.

Selective is correct in that Eavenson, in his second amended complaint, states, for the first time, ". . . Selective, through an arrangement with Corvel, submitted [Eavenson's] medical

6

bills for review by Corvel." Second Am. Compl. ¶ 24. Eavenson's allegations as to how this constitutes a different transaction or occurrence, such that this case should be remanded, are conclusory at best. The gravamen of Eavenson's action remains the same: that Selective "gained access" to the discounted reimbursement amounts associated with [Eavenson's] provider agreements with Corvel and systematically and improperly applied PPO discounts to [Eavenson's] medical reimbursement . . . without any legal or valid contractual right to do so." *Id.* at ¶ 27.

Eavenson has not, by the addition of this single factual allegation, propounded a claim "sufficiently distinct" such that the Court would treat it as a new piece of litigation. ***Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 807 (7th Cir. 2005)**; *see also Comes v. Microsoft Corp*., **403 F.Supp.2d 897, 903 (S.D. Iowa 2005) (additional allegations set forth in four paragraphs of a 94-page complaint did not create a "wholly distinct claim" such that it has commenced a new civil action under the CAFA.)**. As the Seventh Circuit Court of Appeals stated in *Schorsch,* "workaday changes routine in class suits" do not "kick off wholly distinct claims." **417 F.3d at 751**.

Eavenson's second amended complaint relates back to the first amended complaint filed prior to the enactment of CAFA, in that the first amended complaint "furnished to the defendant all the information necessary . . . to prepare a defense subsequently asserted in the amended complaint." *Id.* **(***citing  Boatmen's National Bank of Belleville v. Direct Lines, Inc.,* **167 Ill.2d 88, 102, 656 N.E.2d 1101, 1107 (Ill. 1995)**.

Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand (Doc. 8) and **REMANDS** this case to the Circuit Court of Madison County, Illinois.

      **IT IS SO ORDERED.**

**DATED this 12th day of February, 2007**

                                                **<u>s/Michael J. Reagan</u>**
                                                **MICHAEL J. REAGAN**
                                                **United States District Judge**